Filed 5/10/22  P. v. Starling CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>GREGORY WILLIAM STARLING,<br><br>    Defendant and Appellant. | F081875<br><br>(Kern Super. Ct. No. BF138524A)<br><br><br>**OPINION** |

**THE COURT**\*

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, and William K. Kim, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In 2012, appellant Gregory William Starling was convicted of premeditated attempted murder and sentenced to the second strike term of 14 years to life, plus 25 years to life for the personal discharge of a firearm causing great bodily injury.

---

\* Before Hill, P. J., Detjen, J. and Meehan, J.

In 2020, Starling filed a petition for resentencing of his conviction for premeditated attempted murder pursuant to Penal Code[1] section 1170.95. The superior court summarily denied the petition because Starling was convicted of attempted murder and not murder and ineligible for relief under the then-existing statutory provisions.

On appeal, Starling's appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) We ordered further briefing from the parties as to whether the instant appeal was affected by the enactment of Senate Bill No. 775 (2020–2021 Reg. Sess.) (Senate Bill 775), which amended section 1170.95, effective on January 1, 2022, to add attempted murder as an eligible conviction for resentencing. After considering the parties' arguments, we affirm.

## **FACTS**[2]

On September 12, 2011, around 9:00 or 10:00 a.m., Starling was accompanied by another man when he approached Marcus Williams at the Royal Palms Motel, gave Williams some money, and asked him if he could get some crystal methamphetamine. Williams winked at Starling, and he winked back as Williams told him to wait before he left to get the drugs. Williams soon returned with the drugs and told Starling he needed $5 more, which Williams thought the other man would pay. Instead, Starling gave him the additional $5.

At approximately 1:00 p.m., while Williams was smoking crack in a motel hallway, Starling told Williams that the other man said the drugs were not good. Williams gave Starling $5 and complained that Starling knew that the wink meant the

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] The following factual summary is taken from the records of Starling's jury trial that are contained in the instant appellate record and this court's nonpublished opinion and appellate records from his first appeal (*People v. Starling,* Nov. 14, 2014, F065302), of which we have taken judicial notice without objection from the parties. (§ 1170.95, subd. (d)(3); Evid. Code, § 450, § 452, subd. (d), § 459; *In re W.R.* (2018) 22 Cal.App.5th 284, 286–287, fn. 2.) We recite these facts to provide context for the court's ruling and the parties' arguments. As will be explained below, we do not rely on this factual summary to resolve the issues presented in this appeal. (See § 1170.95, subd. (d)(3).)

drugs he gave Starling were not good, and Starling acknowledged that he knew this. Starling then asked Williams if anyone had crack cocaine. Williams replied that he did and after smoking some together, they each went their own way.

Approximately 90 minutes later, Williams returned to the hallway to smoke crack cocaine again and saw Starling there. Starling told Williams, "Hey, man, are you going to look out for your boy?" Williams again smoked some of his crack cocaine with Starling. Approximately two and a half hours later, Starling again asked Williams for crack cocaine and Williams gave him a little more. Sometime after dark, Williams encountered Starling as he exited a hallway into the motel's south parking lot. This time after greeting each other, Williams told Starling, "I can't keep feeding you … [e]very time I see you." Starling then went into his car and smoked something. A short time later, Williams again saw Starling in his car "taking a hit," but he did not talk to him.

Later that night, Williams rode his bicycle to a palm tree at the southeast corner of the motel where his friend, Debra Lejander, and several other people had gathered. Shortly before 11:30 p.m., as Williams was laughing and talking with other people by the palm tree, Starling came up and gave Williams a look that indicated to Williams that he was not happy. Starling then went into a hallway located near the palm tree and returned within seconds holding a gun. As Williams attempted to pedal away northbound, he heard Starling say, "You think I'm playing?" He then heard a loud sound and fell to the ground with a bullet wound to the neck.[3]

Bakersfield Police Officer John Billdt was the first officer to arrive on the scene. Williams's level of consciousness would rise and fall as Officer Billdt repeatedly asked Williams who shot him. Eventually, Williams told the officer that Starling shot him. Officer Billdt interviewed Lejander, and she also identified Starling as the shooter.

---

[3] Lejander testified she first saw that Starling had a gun when she saw Starling point it at Williams's back as he told Williams he wanted his $15. She then saw Starling move to one side of Williams and shoot him. Starling then walked away toward the east side of the motel.

Officer Kenneth Sporer rode to the hospital in an ambulance with Williams. Enroute, Williams again identified Starling as the person who shot him. Additionally, Williams and Lejander were each shown a photo lineup and each picked Starling out of the lineup as the person who shot Williams.

The bullet that struck Williams on his neck damaged Williams's spinal cord and left him paralyzed from the chest down.

## PROCEDURAL BACKGROUND[4]

On November 28, 2011, an information was filed in the Superior Court of Kern County charging Starling with count 1, attempted premeditated murder (§§ 664, 187, subd. (a), 189), with an enhancement for personal discharge of a firearm causing great bodily injury (§ 12022.53, subd. (d)); count 2, assault with a firearm (§ 245, subd. (a)(2)), with enhancements for personal use of a firearm (§ 12022.5, subd. (a)) and personal infliction of great bodily injury (§ 12022.7); and count 3, felon in possession of a firearm (former § 12021, subd. (a)(1)); with one prior strike conviction, one prior serious felony enhancement (§ 667, subd. (a)), and three prior prison term enhancements (*id*. at subd. (b)).

**Jury Instructions**

The jury was instructed with CALCRIM 600, attempted murder, that the People had to prove (1) defendant took at least one direct but ineffectual step toward killing another person and (2) "[t]he defendant intended to kill that person." (*People v. Starling*, *supra*, F065302.) The jury also received CALCRIM No. 601 on premeditation and deliberation: "The defendant acted willfully if he intended to kill when he acted. The defendant deliberated if he carefully weighed the considerations for and against his

---

**4** The following procedural background is from the records of Starling's jury trial that are contained in the instant appellate record and this court's opinion and appellate records from his first appeal. (§ 1170.95, subd. (d)(3).)

choice and, knowing the consequences, decided to kill. The defendant premeditated if he decided to kill before acting." (*People v. Starling*, *supra*, F065302.)

As to the section 12022.53, subdivision (d) enhancement, the jury received CALCRIM No. 3149: "If you find the defendant guilty of the crime charged in Count One, you must then decide whether the People have proved the additional allegation that the defendant personally and intentionally discharged a firearm during that crime causing great bodily injury." The People had to prove: (1) the defendant "personally discharged a firearm during the commission of that crime," (2) the defendant "intended to discharge the fireaerm," and (3) the "defendant's act caused great bodily injury to a person."

The court instructed the jury on attempted voluntary manslaughter as lesser included offense, the evaluation of eyewitness identification testimony, and CALCRIM No. 625, that it could consider evidence, if any, of defendant's voluntary intoxication "only in deciding whether the defendant acted with an intent to kill, or the defendant acted with deliberation and premeditation."

The jury was not instructed about accomplices, aiding and abetting, the felony-murder rule, the natural and probable consequences doctrine, or any underlying felonies, target, or nontarget offenses.

**Convictions and Sentence**

On March 22, 2012, after a jury trial, Starling was convicted as charged of count 1, attempted premeditated murder, with an enhancement for personal discharge of a firearm causing great bodily injury; count 2, assault with a firearm, with enhancements for personal use of a firearm and personal infliction of great bodily injury; and count 3, felon in possession of a firearm.

The court found he had one prior strike conviction, one prior serious felony enhancement, and two prior prison term enhancements.

5.

On July 6, 2012, the court denied Starling's motion for new trial and his request to dismiss the prior strike conviction pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 and section 1385.

The court sentenced Starling to the second strike term of 14 years to life for count 1, attempted premeditated murder, plus consecutive terms of 25 years to life for the section 12022.53, subdivision (d) personal discharge enhancement, five years for the prior serious felony enhancement, and two one-year terms for the prior prison term enhancements. The court stayed the terms imposed for counts 2 and 3.

**Starling's Direct Appeal**

On November 14, 2014, this court affirmed Starling's convictions and sentence on appeal, in an opinion filed pursuant to *People v. Wende, supra*, 25 Cal.3d 436. Starling submitted a letter brief raising ineffective assistance and an alleged violation of his right to a speedy trial and challenged the denial of his new trial motion; we held these claims lacked merit. (*People v. Starling*, *supra*, F065302.)

## SENATE BILL NOS. 1437 & 775

The instant appeal is from the denial of Starling's petition for resentencing that he filed in 2020, pursuant to Senate Bill No. 1437 (2017–2018 Reg. Sess. (Senate Bill 1437)).

Senate Bill 1437 was effective on January 1, 2019, and amended " 'the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)[5]

---

[5] As amended, section 189, subdivision (f) states an exception that allows "individuals to be convicted of felony murder even if they did not act with malice and do not fall in one of the three categories of section 189, subdivision (e), where the victim is a peace officer engaged in the course of his or her duties and the defendant knows (or

"Substantively, Senate Bill 1437 accomplishes this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723; *People v. Gentile* (2020) 10 Cal.5th 830, 842.)

"In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief. " (*Lewis, supra*, 11 Cal.5th at p. 959.)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to section 188 or 189 made effective January 1, 2019.' [Citations.] Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' [Citation.] If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' " (*Lewis, supra*, 11 Cal.5th at pp. 959–960.)

"Where the petition complies with [section 1170.95,] subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. [Citation.] [¶] If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder

reasonably should know) these facts." (*People v. Hernandez* (2021) 60 Cal.App.5th 94, 99.)

conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not … previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' " (*Lewis, supra*, 11 Cal.5th at p. 960.)

**Lewis**

In *Lewis*, the court interpreted the provisions of section 1170.95 and held that petitioners "are entitled to the appointment of counsel upon the filing of a facially sufficient petition [citation] and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Lewis, supra*, 11 Cal.5th at p. 957.) " 'If the petitioner has requested counsel, the court *shall* appoint counsel to represent the petitioner.' " (*Id*. at p. 963, italics added in original.)

*Lewis* also held that "at the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra,* 11 Cal.5th at p. 974.) When the court conducts the prima facie determination, section 1170.95, subdivision (b)(2) only permits screening out "noncomplying petitions, not petitions that lack substantive merit." (*Lewis,* at p. 968.)

*Lewis* further held that after appointing counsel, the trial court may rely on the record of conviction to determine whether the prima facie showing has been made in order "to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, 11 Cal.5th at p. 971.) "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a

prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' " (*Id*. at p. 971.)

" 'However, if the record, *including the court's own documents*, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra*, 11 Cal.5th at p. 971, italics added.)

"Appellate opinions … are generally considered to be part of the record of conviction.  [Citation.]  However, as we cautioned in [*People v. Woodell* (1998) 17 Cal.4th 448, 457], the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.'  [Citation.]  In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'  [Citation.]  As the People emphasize, the 'prima facie bar was intentionally and correctly set very low.' " (*Lewis, supra*, 11 Cal.5th at p. 972.)

"[T]here is no categorical bar to consulting the record of conviction at the prima facie stage." (*Lewis, supra*, 11 Cal.5th at p. 972, fn. 6.)  "In sum, the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under [section 1170.95,] subdivision (c)." (*Id.* at p. 972, fn. omitted.)

The prima facie determination is a question of law, and the court may deny a petition at the prima facie stage if the petitioner is ineligible for resentencing as a matter of law.  (*Lewis, supra*, 11 Cal.5th at p. 966.)

*Lewis* announced a prejudicial error standard under *People v. Watson* (1956) 46 Cal.2d 818, if the court failed to appoint counsel or violated the petitioner's statutory

9.

rights under section 1170.95, and the petitioner must "therefore 'demonstrate there is a reasonable probability that in the absence of the error he [or she] … would have obtained a more favorable result.' " (*Lewis, supra*, 11 Cal.5th at p. 974.)

Therefore, to demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at pp. 972–974; see *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

**Senate Bill No. 775**

In October 2021, Senate Bill No. 775 was enacted and amended section 1170.95, effective on January 1, 2022. (2020–2021 Reg. Sess.; Stats. 2021, ch. 551, § 1 (Senate Bill 775).) As a result of the amendments, section 1170.95 clarified that a "person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter," may file a petition to have that conviction vacated under certain circumstances. (§ 1170.95, subd. (a), italics added.)

The amendments also codified the holding in *Lewis* that "[u]pon receiving a petition in which the information required by this subdivision is set forth …, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1170.95, subd. (b)(3).) After the petition is filed, the People shall file a response and the petitioner may serve a reply. (*Id*. at subd. (c).)

After the parties have the opportunity to submit briefs, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1170.95, subd. (c).) If the petitioner makes the prima facie showing, "the court shall issue an order to show cause." (*Ibid*.) If the court declines to issue an order to show cause, "it shall provide a statement fully setting forth its reasons for doing so." (*Ibid*.)

If an order to show cause is issued, "the court shall hold a hearing to determine" whether to vacate the petitioner's conviction, recall the sentence, and resentence petitioner. (§ 1170.95, subd. (d)(1).) At the hearing, the prosecution has the burden to prove beyond a reasonable doubt that petitioner is guilty of murder or attempted murder under the amended versions of sections 188 and 189. (§ 1170.95, subd. (d)(3).)

"At the hearing to determine whether the petitioner is entitled to relief … [t]he admission of evidence in the hearing shall be governed by the Evidence Code, except that the court *may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion*. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder … is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3), as amended by Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022, italics added.)

### STARLING'S SECTION 1170.95 PETITION

On September 4, 2020, Starling filed a petition for resentencing of his attempted murder conviction pursuant to section 1170.95 and requested appointment of counsel.

The petition was supported by Starling's declaration, signed under penalty of perjury, where he checked boxes on a preprinted form that he was entitled to resentencing under section 1170.95 because a complaint or information was filed against him that allowed the prosecution to proceed under a theory of "felony murder" or "murder" under the natural and probable consequences doctrine; at trial, he was convicted of first or second degree "murder" pursuant to the felony-murder rule or the natural and probable

11.

consequences doctrine; and he could not now be convicted of first or second degree "murder" under the amended versions to sections 188 and 189.

**The Court's Summary Denial**

The superior court did not appoint counsel to represent Starling, allow briefing from the People or further briefing from Starling, or hold a hearing on whether he made the required prima facie showing. Instead, on September 10, 2020, the court issued an order that denied the petition, and found Starling was ineligible for resentencing under section 1170.95 because "[t]his case does not contain a conviction of … section 187," murder.

**Appellate Briefing**

On October 13, 2020, Starling filed a timely notice of appeal.

As noted above, Starling's counsel filed a *Wende* brief with this court. The brief also included the declaration of appellate counsel indicating that Starling was advised he could file his own brief with this court. By letter on January 28, 2021, we invited him to submit additional briefing. He failed to do so.

This court sent a briefing order to the parties to address whether the amendments to section 1170.95, enacted by Senate Bill 775, and became effective on January 1, 2022, were applicable to this appeal and required remand. As explained above, the amendments added attempted murder as a conviction eligible for resentencing under section 1170.95.

In response, the parties agreed the amended version of section 1170.95 applied to Starling's case since it was not yet final on appeal, and an attempted murder conviction was now eligible for resentencing. Starling asserted the court violated section 1170.95 by failing to grant his request for appointment of counsel, and the error was prejudicial since the court did not address whether he made a prima facie case for relief.

The People argued there was no prejudice from the court's denial of his petition because he was ineligible for relief as a matter of law since the jury found true the section

12.

12022.53, subdivision (d) enhancement, that he personally and intentionally discharged a firearm causing death or great bodily injury, such that he was not convicted under any imputed malice theories.

## DISCUSSION

When Senate Bill 1437 became effective on January 1, 2019, it did not include attempted murder as an eligible offense for resentencing. (*Lewis, supra,* 11 Cal.5th at p. 959.) Thus, at the time the superior court denied Starling's petition, he was not eligible for resentencing under the then-existing version of section 1170.95 since he was convicted of attempted premeditated murder.

Senate Bill 775 amended section 1170.95, effective January 1, 2022, so that a person convicted of "attempted murder under the natural and probable consequences doctrine" is now eligible for resentencing. (§ 1170.95, subd. (a).) As Starling's case is not yet final, Senate Bill 775's amendments to section 1170.95 are applicable to his petition, so that he is potentially eligible for resentencing for his attempted murder conviction.

We further note the court summarily denied Starling's petition without appointing counsel, allowing the parties to submit briefing, or holding a hearing, as required by the amendments enacted by Senate Bill 775 to section 1170.95, subdivisions (b) and (c). The court gave a reason why it was not issuing an order to show cause, and stated it denied the petition because Starling was not convicted of murder.

While the court likely relied on the procedural history of Starling's case to find he was ineligible for resentencing at that time since he was not convicted of murder, it is unclear whether the court reached that conclusion by making factual findings from this court's opinion on direct appeal. The opinion from Starling's direct appeal is part of the record of conviction that the court may consider in determining whether petitioner has made a prima facie showing of resentencing eligibility. (*Lewis, supra*, 11 Cal.5th at p. 972.) However, the role of the appellate opinion is circumscribed. The factual

summary contained in an appellate opinion is not considered admissible evidence regarding a petitioner's resentencing eligibility (§ 1170.95, subd. (d)(3)), and the court may not engage in factfinding based on the appellate opinion at the prima facie stage (*Lewis,* at p. 972).

Section 1170.95 did not list attempted murder as an offense eligible for resentencing at the time Starling filed his petition, but the superior court erroneously denied the petition without appointing counsel, allowing for briefing, conducting a hearing, and if it engaged in premature factfinding at the prima facie stage. (§ 1170.95, subds. (b), (c).) To the extent the court committed error, we may affirm if the petitioner was not prejudiced by the error. (*Lewis, supra*, 11 Cal.5th at pp. 972–974.)

**Prejudicial Error**

To demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent statutory errors, his petition would not have been summarily denied without an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at pp. 972–974; *People v. Watson, supra,* 46 Cal.2d at p. 836.)

As a result of Senate Bill 775's amendments, a person convicted of attempted murder is eligible for resentencing if he was convicted "under the natural and probable consequences doctrine." (§ 1170.95, subd. (a).) However, a petitioner is ineligible for resentencing if he or she was the "actual killer," or in the case of attempted murder, the actual perpetrator. (§§ 188, subd. (a)(3), 189, subd. (e), 1170.95, subd. (a)(3); see *People v. Gentile, supra,* 10 Cal.5th at p. 842.) The court may rely on jury instructions, which are part of the record of conviction, to make the prima facie determination, because the instructions "given at a petitioner's trial may provide 'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of

evidence or the exercise of discretion.' " (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, disapproved on another ground in *Lewis*, *supra*, 11 Cal.5th 952.)

Starling was not prejudiced by the court's failure to comply with section 1170.95 because the record shows he was charged and convicted as the person who shot the victim, the jury found he acted with the intent to kill, and he was not convicted under the natural and probable consequences doctrine. As set forth above, the procedural records from Starling's trial show the jury was instructed on attempted murder and premeditation. As to attempted murder, the jury was instructed that it had to find the defendant "intended to kill that person," and as to premeditation, that "he intended to kill when he acted." The jury was not instructed on aiding and abetting, accomplices, the felony-murder rule, the natural and probable consequences doctrine, any underlying felonies, or target or nontarget offenses.

In light of the court's instructions and jury's verdicts, Starling's conviction for attempted premeditated murder necessarily reflected a finding that he was the actual shooter, he acted with the intent to kill, and he is ineligible for relief under section 1170.95 as a matter of law. He was not convicted as an aider or abettor, or under the natural and probable consequences doctrine. (§ 1170.93, subd. (a)(3); *Lewis, supra,* 11 Cal.5th at p. 959.) We thus conclude he was not prejudiced by the court's summary denial of his petition. (*Lewis, supra*, 11 Cal.5th at pp. 972–974.)

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## DISPOSITION

The judgment is affirmed

15.